Good morning. Good morning, Your Honors. Opposing counsel. May it please the Court. This case concerns a finding at Stepney. Can you tell us your appearance for the record, please? Yes, Your Honor. Allison Young for the appellant, Danielle Pauley. Thank you. This case concerns a finding that jobs exist in significant numbers in the national economy that Ms. Pauley can perform. Specifically, this is about the ALJ's discussion of rebuttal evidence that was submitted to the vocational testimony at Step 5. There are three occupations that were at issue in this case, those being eyeglass assembler, jewelry preparer, and fishing equipment assembler. The vocational expert testified to a frankly convoluted method for deriving numbers himself. He stated that he uses a business directory to determine the number of businesses for that industry and then would, and I'm quoting here, try to draw some assumptions from that for a number of jobs. Counsel, can you explain to me how the rebuttal evidence in Wichman is different than the rebuttal evidence you provided in this case? Well, the rebuttal evidence in Wichman, I don't know whether it was scrambled by some electronic process or whether it was illegible in the original, but it had headers that didn't line up with the numbers. It was just, it was a mess, frankly. These reports are perfectly legible. They include a paragraph from SkillTran explaining their methodology, and they indicate both the overall industry that they are estimating from and the percentages that they use to come up with a final number. And SkillTran was the same process that the government used? Well, for two of the three jobs, the expert said that he relied on the SkillTran numbers. And I would assume that since JobBrowserPro is the flagship product of SkillTran, that they're using that same, that they would be the same numbers. And that's a big part of our problem here in that the vocational expert for those two jobs indicated 24,000 some jobs for the jewelry preparer, 14,000 and change for the fishing equipment assembler. JobBrowserPro indicated no positions for jewelry preparer and only 19 for the fishing assembler. So obviously those numbers are vastly different. Thank you. So if we agree with you on that point, then it just would go back to the ALJ to state, to look at what you submitted and what the vocational expert did at that particular time and just give reasons one way or the other.  I think fundamentally, yes. He didn't actually address the evidence, but the ALJ's addressing of the evidence was by having words, essentially. The judge said that the vocational expert's testimony was based on his consideration of specific hypotheticals posed at the hearing in conjunction with his professional experience and knowledge, including 30 years as a vocational expert rehabilitation counselor. So he was relying on the expert because he's an expert. But inadequacy isn't essentially sufficient to meet credit as true, is it? Well, that's a good question, Your Honor. But I don't think we have a situation where we can remand for me because it's not clear from the record whether these are the only jobs that exist that might fit that hypothetical. If the vocational expert had testified that these are the only jobs, and if we knew for a fact that there are only 50 jobs total for these three, I think that would be enough to order immediate payment. I'm sorry. Go ahead. Finish. Because we don't know if there are other jobs that meet, you have to remand for further. So the government argues that your job's evidence is not significant or probative, I think, in part because you did not duplicate the methods used by the vocational expert Arnaz. Was that the expert's name, I think? Does our case law require you to duplicate vocational experts' methods? And if so, did you duplicate Mr. Arnaz's methods? There are two parts to that. The first being, do we have to replicate the vocational expert's methods? I would say that we do not. The standard is that the evidence must be significant and probative. It is clear that replicating vocational expert's methods is enough to meet that standard. That doesn't mean that that is the standard. And we believe that, given that two of the three jobs the vocational expert did rely on skill trans numbers by his own testimony, so at least for those, I think we have the evidence because we're also relying on skill trans numbers. Could we affirm on the eyeglass assembler figures alone, since they are? I don't believe so because we've rebutted that in a different way. The vocational expert testified that there were 35,000 positions for his eyeglass assembler, but according to census data, there's less than 25,000 people in that eyeglass assembly. It's just not possible that there are 15,000 more people doing that one job than there are in the entire country. So all the numbers were, when you cross-examined the expert, you brought up all of those things and then you just submitted the actual documents, correct? I didn't argue this case before the hearing, so I'm going by what the record tells me, but at least the issue of the source of the job numbers was raised at the hearing, and then the rebuttal evidence was submitted. Well, and that's kind of the common way because you don't necessarily take depositions of the expert. The expert gets up there, then you cross on that, and then you, so I think the government also, you didn't submit, or when I say you, I realize what you're saying is you weren't the person, but yeah, but the expert, your submissions are not by an, it's not an expert opinion or it's not something like that. It's just documents that are pulled off a database that were cross-examined, the expert at the time, right? That's correct. I guess, and to be clear, though, what you're asking us to do and what you're identifying as the issue is that you provided this rebuttal evidence that you've claimed that is significant and probative, and the ALJ did nothing with it, correct? Essentially, yes. The judge didn't explain how the vocational experts' purported expertise can reduce this number from, sorry, he didn't reduce the numbers, he increased the numbers, but the raw data from Skiltrans says that there's this vanishingly small number of jobs, and there's nothing to explain how his 30 years of experience can inflate that number by a factor, or in the case of Eyeglass Assembler, inflate that number to one and a half times the total number in the industry. So, but the government argues that Kilpatrick and Wishman require that any alternative evidence be produced by someone with expertise. I'm assuming you don't agree with the reading of those cases? I'm sorry, I didn't mean to interrupt you. I don't agree that there's an outright requirement that the numbers be produced by someone with expertise. Job Browser Pro is relied on by vocational experts widely in Social Security cases, as the Court noted in White. So while we ourselves are simply relying on Job Browser Pro, Job Browser Pro numbers are produced by experts. So, but I'm understanding your position ultimately if we agree with you that the ALJ erred by not discussing those, that what we're remanding it for is for the ALJ to reevaluate the alternative job numbers against the expert. Either that or to obtain new vocational testimony to see if there are other jobs available, yes. So, are you asking for, what, a redo? We're asking for a remand for Step 5 to determine whether, in fact, there are jobs that exist in significant numbers within the residual functional capacity. That could be done either by explaining where these numbers come from and why they're credible, or by determining that there are other numbers out there. So do you want to reserve any time for rebuttal? I would like to reserve what I have left. Okay, thank you. Thank you. Good morning. Good morning, Your Honors. Good morning, Counsel. If it may please the Court, excuse me. I am Edmund Darcher, and I represent the defendant, the Commissioner of Social Security Administration. In this case, it turns on whether the administrative law judge reasonably addressed Pally's objection to the job numbers. And for the Step 5 decision.  So we've got sort of that single issue. Yes. And your reading of Kilpatrick seems to be different than your friend on the other side. Yes. Well, in Kilpatrick v. Kijikazi, this Court found that an ALJ need only explain why he is discounting a claimant's rebuttal evidence for Step 5 job numbers. In this case, the ALJ explained that he found those alternative job numbers to be unpersuasive compared to the vocational experts. But if there's no question that the numbers are vastly different than the vocational experts said, how can the ALJ's statement to that effect be of any value? Well, because he relied on the vocational experts' experience, expertise, and knowledge. And like in Kilpatrick and Wishman, those also dealt with wide discrepancies in the alleged job numbers. But there's a requirement to reconcile, though. There's a requirement that the ALJ must reconcile that discrepancy. What in the record shows us that that's what happened here? Well, the ALJ, I believe, recognized the conflict in the job numbers posed by— Where specifically? If you have at some point, you can give me that site, because I'm trying to understand where the reconciliation happened. Certainly. The ALJ's reason was sparse, but it was relying on the vocational experts' experience, knowledge, expertise, to basically decide to resolve the conflict posed by the job numbers. But, okay, so the eyeglass assembler, the difference between the respective job numbers is 39,425 versus 27. For the fishing equipment assembler, the difference between the respective job numbers is 14,700 versus 19.  So— And that— And for the jewelry preparer, it's 24,700 versus zero. So can you explain why the difference in those numbers is not significant? And I think Judge Mendoza is asking you, say where can we specifically see that? We can see that they aren't significant or probative enough for the ALJ to have to give more discussion because of how they did not replicate the vocational experts' methodology nor provide any professional experience for the assertions that they made with that rebuttal evidence. Here, the vocational expert testified— It gives the same systems? I don't believe that that's established, Your Honor. The vocational expert here testified that the job numbers for two of the jobs— for two of the occupations, rather, those of jewelry preparer and fishing equipment assembler were from SkillTran, which offers a variety of vocational services and software. The vocational expert did not testify that he was duplicating numbers from Job Browser Pro, which is what PAOLE produces to try to displace the ALJ's finding of persuasive, reliable vocational testimony. And in Wishman, we saw that claimant providing Job Browser Pro numbers is not going to be significant or probative, typically, unless it was accompanied by some kind of explanation about how those job numbers were produced, what kind of professional experience was used, and what the version was that produced those. I'm sorry. I thought that they had used SkillTran, which was what was testified to by the VE. Yeah, and SkillTran offers many different types of ways of devising, not just Job Browser Pro. And I believe that PAOLE's briefing kind of glosses over how— I believe it might be at page 16 of their opening brief—how it doesn't cover web-based services. And this is just to point out how this is kind of an untrained, unrefined data. Did the ALJ point that out in that way that you've just indicated? The ALJ pointed out that the vocational expert had experience and professional knowledge to back up their testimony, whereas PAOLE doesn't. So to say also that those—and in Wishman, the vocational expert also did testify very clearly that they were using Job Browser Pro, and even then that vocational expert's testimony wasn't displaced because of how the data was unrefined and instituted by somebody who didn't have any apparent expert professional experience to do so. And you're arguing that our case law says that? I believe our case law does say that. I believe that— And you're relying on which case specifically? Wishman and Kilpatrick, and also, I mean, from—I think that the through line from those cases comes from Bistik versus Berryhill, too, where we cannot create categorical rules about what kind of evidence would displace an ALJ's reliance on vocational testimony at Step 5 because we have to look at the very case-by-case basis and the details. And the details that matter are the things about methodology and professional support that a claimant presents with rebuttal evidence. Well, but under White, the ALJ is required to address discrepancies and not—and resolve the inconsistency between the job number estimates. And where in the ALJ's decision did the ALJ resolve the inconsistency between those job numbers? I think it's in that same paragraph where they rely on the expert's testimony and rely on the expert's expertise. So you can just say, because you're an expert and because these other numbers are not from an expert, that's the end of the inquiry? Do we have to—that's what it seems like you're asking us to do. I'm asking you to do so in this case because on the case-by-case details, and that's what we see with Bistik and Kilpatrick and Wishman, that it's these details about the vocational expert testimony and the whole expert's— Counsel, the first sentence in Wishman says that there has to be a reconciliation of those inconsistencies. So I just—I don't see that in the record, that the IJ did that. I will submit that the ALJ could have given more explanation. And just saying that we're relying on the expertise might not be sufficient in every case, but I believe it is sufficient in this case because of how this case resembles Wishman and Kilpatrick in the ways that the ALJ—the methodology. And I want to point out, too, that— Do you have a better argument if the numbers were closer? I mean, here they're very disparate, down to zero, you know, compared to, you know, 14,000. You know, I'm always sort of amazed looking at the things that people can do. It's kind of an arcane way that we look at things when you hear, oh, well, you can be a jewelry preparer. You can be an eyeglass assembler. You can do this, that. But that's the way we do it. If I may continue, I believe that the vocational expert gave reliable testimony about those jobs and how frequent they are—their prevalence in the national economy. Well, okay, let's say the vocational expert gave reliable testimony as to his numbers. But the case law seems to say you have to address a wide discrepancy. Where does that happen in the record? The ALJ doesn't say or describe exactly how big the discrepancy is. The ALJ says that he is relying on the vocational expert's testimony based on their experience and knowledge and expertise. And that includes all of their testimony about the methodology and the way that they were able to be subjected to cross-examination. The evidence that they submitted, did it come from the usual type of sources of numbers out there? Or did it come from, let's say it came from Connie Callahan's website? It seems that the databases were databases that everyone uses. But not everybody uses in the same way. Well, and so that's easy enough to say. It is easy enough to say that they could produce numbers based on their untrained, unrefined use of that data. That's not what was said, though. Was it said by the ALJ? By the ALJ, which is what we're looking at. But even if we looked at the details, that isn't produced using the same methodology, and we can see that it wasn't the same methodology, it's not significant or probative enough. Can we see that? I believe so. Just because the ALJ says I'm relying on the experience of the vocational expert, that doesn't tell us anything about the methodology the expert or the submitted material uses, does it? It tells us that the ALJ was relying more upon an expert's opinion than the untrained raw data produced. That is what it tells us. Well, it tells us that he's relying on the expert. It doesn't tell us anything more than that, based on the expert's expertise, right? And if there was more robust duplication, replication of the vocational expert's methodology, and some sort of professional refinement of the data that Pally submitted, the ALJ probably should have given a more robust explanation. But when we see how in Kilpatrick versus Keating, or in these other cases, how we're not duplicating the methodology, and we're using unrefined data to produce numbers that aren't widely discrepant, but unlike in Buck versus Berryhill, or unlike in White versus Wishman, there's not been any curtailment of the cross-examination of the vocational expert, and that there's not any, that we don't see the exact duplication of the methodology. Isn't this exactly like Buck, where they said, this is simply too striking to be ignored? Isn't that, I mean, zero jobs that they submitted versus the numbers that the VE testified to? I think it's not surprising that the numbers were very different because of how they weren't using the same methodology or using any professional experience. The vocational expert testified that the job numbers for Eyeglass Assembler were based on a combination of sources, like Data Axle, a commercial service, and the extrapolation of job numbers from optical laboratories. The vocational expert did not testify that he was unable to determine the number of optical laboratories. He testified that he needed to use his combination of professional experience and sources to arrive at that number, because those databases did not produce that data for them. And instead of drilling down during the hearing to determine what the identity of those databases were, Cowley's attorney instead submitted U.S. data, or U.S. Census Bureau data that they claim captures the entire way that you could, all the different ways you could become an Eyeglass Assembler, but also seems to admit that that database doesn't contain, or, excuse me, glosses over the fact that that data they submitted doesn't include retail settings for assembling eyeglasses, doesn't include anything that resembles the vocational expert's testimony. All right, well, we've taken you over your time. Let me find out if my colleagues have any additional questions. They do not appear to, so that will conclude your comments. Thank you. Thank you, Your Honors. Thank you, Your Honors. I'd like to talk a little bit more about the expert's testimony about the eyeglass industry. In describing his overall process, the expert testified that he would use a business directory to determine the number of businesses within the industry and then use that to try to draw some assumptions from that number of jobs, which sounds like guesswork to me, but let's assume it's educated guesswork. He then testified that there is no reliable data on the number of businesses for the optical goods industry. So that means his process is starting with a number that by his own admission doesn't exist and then proceeding with educated guesswork, but guesswork nonetheless. There's no possible way that that can get a reliable number. I think their point is that the methodology was not necessarily used in the same way, and that's what produced the different numbers. And because of that, it's not a sufficient comparable, if you will. I don't disagree with that, but I also would again state that there's not an overt requirement that we duplicate the vocational experts process. We merely have to offer evidence that is significant and probative. Would your case be less strong if the numbers were close and the ALJ said... If the numbers were closer, there would be some room for interpretation. And said, I'm relying on the expert, and then you just kind of... You know, if our numbers were 90% of the experts' numbers, I don't think we'd have a leg to stand on. Okay, I'm sorry. No, no, no. What should the rule be then? I think the rule should... Well, the rule is that the evidence must be significant and probative, and that analysis is done on a case-by-case basis. I think in this case, the vocational expert is giving a number for one industry that's 150% of the total for the industry according to the census, and for the other, he's relying on a source, Skiltran, that when we go to Skiltran and ask for the same number at a DOT-specific level, we get a number that's 1,000 times less. All right, you're over your time. Unless my colleagues have additional questions, that will conclude argument in this matter, and this case will be submitted. Thank you both for your argument.
judges: CALLAHAN, MENDOZA, Snow